For the reasons assigned in State of Louisiana v. Monix, La., 85 So.2d 243,[1] on the docket of this court and this day decided by us, the herein issued writ of certiorari is vacated and the rule to show cause is discharged.

85 So.2d 246

Chester HUNTER et al.

v.

John B. HUSSEY, Commissioner of Conservation.

No. 42581.

Jan. 16, 1956.

Locke, Locke & Purnell, Dallas, Tex., Blanchard, Goldstein, Walker & O'Quin, Shreveport, for plaintiffs-appellants.

Winston B. Linam, Shreveport, Leo J. Hoffman, Dallas, Tex., Cook, Clark, Egan, Yancey & King, Shreveport, for defendant and appellee-appellant.

MOISE, Justice.

The issue for determination is one of jurisdiction. In connection therewith, we will examine—

First: Article VII, Section 10, of the Constitution of Louisiana of 1921–LSA;

1. 229 La. 142.

Second: The Revised Rules of the Louisiana Supreme Court adopted in 1952;

Third: The recent decisions of the Louisiana Supreme Court on the subject; and

Fourth: The governing authority of the pleadings—plaintiffs' prayer for relief.

Plaintiffs' prayer for relief reads:

"Wherefore, petitioners pray that the Honorable John B. Hussey, Commissioner of Conservation of the State of Louisiana, be duly cited to appear and answer hereto; and that after due and legal proceedings had, there be judgment herein decreeing Order No. 96–G, dated December 2, 1952, issued by the Honorable S. L. Digby, Commissioner of Conservation, as amended by unnumbered order dated February 16, 1953, issued by the Honorable John B. Hussey, Commissioner of Conservation, and Order No. 96–J, dated November 18, 1953, issued by the Honorable John B. Hussey, Commissioner of Conservation, to be null and void; and perpetually enjoining the said John B. Hussey, Commissioner of Conservation, from in any way enforcing or attempting to enforce said orders or any part thereof, and from issuing an allowable to any developed tract which does not have storage tank so that production of well can be gauged or measured; * * *".

Order 96–G of the Commissioner of Conservation authorizes a program of pressure maintenance under certain unitization agreements, approves such agreements, and approves and authorizes the unitization provided therein, as to the parties thereto, all pertaining to a certain zone underlying the Delhi Field, Richland, Franklin, and Madison Parishes.

Order 96–J of the Commissioner of Conservation provides for the transfer of allowables and a pressure maintenance program.

In Article XVII of their petition, plaintiffs allege that Order 96–G is null and void and contrary to the Conservation Statute of the State of Louisiana, LSA–R.S. 30:1 to 20, both inclusive, for the following reasons:

"Said order, as amended, and the acts performed or threatened thereunder:

"(a) Cause net drainage from developed areas low on structure to developed areas high on structure, and particularly that the water injection program will drive oil from under the property owned by petitioners, which is located low on structure, and thus deprive petitioners of the opportunity of producing said oil;

"(b) Unitizes all or a portion of an oil field;

"(c) Unitizes several separate pools;

"(d) Is discriminatory in that it does not apply to all persons in the same situation and actually affects certain interests in a developed tract or tracts and does not affect other interests in the same tract or tracts;

"(e) Allocates to a producer in one pool oil produced from another separate pool or pools and fails to make reasonable adjustment or any adjustment at all upon structural position and fails to take into account producer's 'just and equitable share of the oil' and fails to prevent or minimize reasonably avoidable net drainage from each developed area and does not proceed upon any reasonable basis."

Plaintiffs further allege that Order 96–J is null and void for the same reasons set forth above and for the further reason that it is arbitrary.

Plaintiffs alternatively allege that the orders violate Section 2 of Article I of the Constitution of the State of Louisiana, in that they deprive plaintiffs of their property without due process of law and just compensation.

The district court rejected plaintiffs' demand, and they appealed. To be helpful to the courts, the Conservation Commissioner, likewise, appealed. In each instance, the appeal bond was fixed in the sum of $250.

Article VII, Section 10, of the Constitution of Louisiana of 1921 grants jurisdiction to this Court in seven different classes of cases enumerated as follows:

"1. Civil Cases: That includes civil suits *where the amount in dispute or the fund to be distributed, irrespective of the amount therein claimed, shall exceed* $2,000.00 exclusive of interest, except

"(a) Suits for damages for physical injuries to, or for the death of a person, or for other damages sustained by such person or his legal heirs or his legal representatives arising out of the same circumstances.

"(b) Suits for compensation under the State or Federal Workmen's Compensation Law." (Emphasis ours.)

"2. Domestic Relation Cases and Cases Relating to Persons: These include suits for divorce or separation from bed and board, suits involving alimony, those for the nullity of marriage, for interdiction, those involving the tutorship of minors, or curatorships of interdicts, or those involving the legitimacy or custody of children, and all matters of adoption and emancipation.

"3. Cases Involving the Constitutionality or Legality of Taxes, etc.: Suits wherein the constitutionality or legality of any tax, local improvement assessment, toll or impost levied by the State, or by any parish, municipality, board or subdivision of the State is contested.

"4. Cases Involving the Constitutionality or Legality of Fines, etc.: Suits in which the Legality or constitutionality of any fine, forfeiture, or penalty imposed by a parish, municipal corporation, board, or subdivision of the State shall be in contest whatever may be the amount thereof.

"5. Cases Involving the Constitutionality of Ordinances, Laws, etc.: These include suits wherein an ordinance of a parish, municipal corporation, board, or subdivision of the State, or a law of this State *has been declared unconstitutional*. (Emphasis ours.)

"6. Homestead Exemption Cases: This includes suits involving homestead exemptions, irrespective of the amount involved except in cases involving only movable property.

"7. Criminal Cases: These include suits involving criminal cases, on questions of law alone, whenever the penalty of death or imprisonment at hard labor may be imposed or where a fine exceeding $300.00 or imprisonment exceeding six months has been actually imposed."

A recent constitutional amendment, art. 14, § 15(O), grants jurisdiction to this Court on appeals in Civil Service suits.

This suit certainly does not come within any of the above enumerated classes of cases. It certainly does not come within the first class, because there is no money amount in dispute or a fund to be distributed. To grant relief where no monetary judgment is prayed for or attempt to distribute a fund where no fund is in contest would be a plain usurpation of authority. In fact, on the first page of their brief, plaintiffs themselves characterize this as "a suit to have decreed null and void and to enjoin the enforcement of two orders issued by the Commissioner of Conservation."

Rule X, Section 2, of the Revised Rules of this Court provides that appellant's brief must affirmatively show jurisdiction in this Court. In the instant case, a mere declaration is made in the brief of plaintiffs-appellants that—

*"The value of the production so reallocated and distributed by such orders is many times $2,000.00. In addition, the value of the leasehold and mineral interests owned by plaintiffs in the field and the production attributable thereto, which is adversely affected by such orders, is many times $2,000.00."* (Emphasis ours.)

That statement is merely conjectural; it is not even sworn to. Under old decisions we tolerated the effort to confer jurisdiction by affidavit as to amount involved. However, after the adoption of the Revised Rules of this Court in 1952, we stated, in the case of Duplantis v. Locascio (Locascio v. Duplantis), 223 La. 11, 64 So.2d 624, Justice McCaleb being the organ of the Court:

"While it is true, as stated by counsel for appellants, that this court has in the past approved the filing of affidavits here to supplement a record which failed to affirmatively show that the amount in dispute was within our appellate jurisdiction, it was decided that, after January 1, 1952 when our Revised Rules became effective, *we would no longer continue this practice which we deemed to be inappropriate for the reason that the court, except in certain cases, is not one of original jurisdiction, being bound by the record as made up below."* (Emphasis ours.)

■ The value of the collateral issue which may affect the orders sought to be annulled may have to be proved, because of the harm and effect of the orders. This is done on collateral questions which must be determined in order to decide the dispute involved, but it does not govern the appellate jurisdiction. See Richardson v. Charles Kirsch & Co., 191 La. 991, 187 So. 1; also, Heard v. Monroe Sand & Gravel Co., 165 La. 925, 116 So. 386. We find the Succession of Solari, 218 La. 671, 50 So.2d 801, 802, somewhat a kindred matter. There we held:

"We pointed out only recently that this Court will not ordinarily take appellate jurisdiction over suits for declaratory judgment unless the case is one which falls within the classification set out in Article 7, Section 10 of the Constitution. First National Life Insurance Co. v. City of New Orleans, La., 48 So.2d 145. The present appeal is governed by the provision in this article of the Constitution which gives this Court jurisdiction in civil suits where the amount in dispute or the fund to be distributed exceeds $2,000, exclusive of interest. * * * Opelousas-St. Landry Bank & Trust Co. v. Fontenot, 173 La. 430, 137 So. 339, * * *."

The very recent case of Johnson v. Nora, 228 La. 603, 83 So.2d 643, should be decisive of the matter herein. Justice Hawthorne, organ of the Court, made the following pronouncement:

"* * * The record in the instant case does not affirmatively show that the value of the right here in contest exceeds $2,000, and consequently this court is without appellate jurisdiction. Art. 7, Sec. 10, La.Const. of 1921.

"In arguing that this court has jurisdiction of the instant appeal counsel for appellant rely on the fact that during the trial on the merits appellant was asked: 'Now, has this lawsuit put you to any expense, Nora?' In answer to this question appellant enumerated his attorney's fees and certain expenses he had incurred, and then continued: *'I estimate about seven or eight thousand dollars knock on my place of business.'* We do not think

this statement alone is sufficient to confer upon us appellate jurisdiction. It is not an affirmative showing that the right in dispute exceeds $2,000, but is merely a conjecture or speculation by the defendant, and there is no proof whatever in the record in support of this estimate." (Emphasis ours.)

The objective sought in the instant case is "to have decreed null and void and to enjoin the enforcement of two orders issued by the Commissioner of Conservation."

In Beene v. Pardue, 223 La. 417, 65 So. 2d 897, the Court used such strong language "so that those who run may read." It said:

"* * * before jurisdiction on the basis of the amount in contest or dispute will be entertained, *the record in each case must affirmatively show what the amount is and also, that it is the amount in dispute at the time the case is submitted to the trial court that determines jurisdiction.* [Italics and underscore ours.] * * * *Stipulations such as the one entered into in this case after judgment will not be considered when tendered to support appellate jurisdiction*". (Emphasis ours.)

In the Beene case, supra—

"* * * The land involved between the disputed lines consists of a strip approximately 80 x 1320 feet.

"After trial in the district court, judgment was rendered on March 10, 1952, fixing the boundary and on March 21, 1952, the judgment so rendered was signed.

"*On the same day that the judgment was signed, all parties to the suit entered into a stipulation to the effect that the property involved had a value in excess of $5,000.* Five days later, that is, on March 26, 1952, an appeal was taken to this Court. After the appeal had been perfected, affidavits executed by four individuals alleged to be familiar with the property involved were filed in this Court, all to the effect that it had a value of more than $2500."

In the above case the Court then gave effect to the pronouncement made in Duplantis v. Locascio (Locascio v. Duplantis), 223 La. 11, 64 So.2d 624, and said:

"* * * the Court will not give consideration to affidavits as to the value of the property involved in the suit for the purpose of fixing appellate jurisdiction for the reason that this Court, being one of appellate jurisdiction only, except in certain specified cases, is restricted to a study and review of the record as made up in the Court a qua."

Even before the confection of our Rule X (which is explicit on the subject), we

held, in the case of State v. Cook, 197 La. 1027, 1036, 3 So.2d 114, 117:

"* * * It is the subject matter that is in contest before and at the time when the judgment is rendered in the court of original jurisdiction that determines what court if any has appellate jurisdiction in a given case."

The Court then goes on to say that it is the same—

"* * * as if the amount paid or remitted, or the amount of the debt admitted, had never been sued for. State ex rel. Western Union Telegraph Co. v. Judge, 21 La.Ann. 728; Zacharie v. Lyons, 22 La.Ann. 618; Girardey v. City of New Orleans, 26 La.Ann. 291; Stubbs v. McGuire, 33 La.Ann. 1089; Denegre v. Moran, 35 La.Ann. 346; Guidry v. Garland, 41 La.Ann. 756, 6 So. 563; State ex rel. Boyet v. Boone, Judge, 42 La.Ann. 982, 8 So. 468; State ex rel. Beauvais v. Judges, 48 La.Ann. 672, 19 So. 617; Kaufman v. Sheriff, 107 La. 144, 31 So. 626; State ex rel. Taylor v. Judges, 107 La. 784, 32 So. 186; Begg v. Maloney, 125 La. 804, 51 So. 905; Borde v. Lazarus, Michel & Lazarus, 127 La. 122, 53 So. 465; In re Petit & Boh Co., 128 La. 163, 54 So. 705.; Wolf v. Thomas, 137 La. 833, 69 So. 269; Crawford, Jenkins & Booth v. Fisher, 144 La. 129, 80 So. 224; Crowell & Spencer Lumber Co. v. Lynch, 157 La. 21, 101 So. 797; Nelson v. Continental Asphalt & Petroleum Co., 157 La. 491, 102 So. 583; A. Baldwin & Co. v. McCain, 159 La. 966, 106 So. 459; City of New Orleans v. New Orleans C. & B. Towboat Co., 168 La. 1093, 123 So. 724; Steeg Printing & Publishing Co. v. Auto Lec Stores, 172 La. 565, 134 So. 746; Chickasaw Wood Products Co. v. Vail-Donaldson Co., 173 La. 59, 136 So. 87; Givens v. Yazoo & M. V. Railroad Co., 173 La. 372, 137 So. 66; Hanover Fire Insurance Co. v. Southern Amusement Co., 176 La. 631, 146 So. 316; H. A. Bauman, Inc., v. Tilly, 188 La. 531, 177 So. 657. Accordingly, if any issue or contest which is essential to give the Supreme Court appellate jurisdiction over the case in which the issue or contest was presented is eliminated before the case is submitted to the court of original jurisdiction for decision, the Supreme Court will not have appellate jurisdiction over the case."

Since our law requires that the record in each case must affirmatively show what the amount is, and, also, that it is the amount in dispute at the time the case is submitted to the trial court that determines jurisdiction, this case is ordered transferred to the Court of Appeal, First Circuit; provided the record is filed in that court within thirty days from the date on which this decree becomes final, otherwise, the appeal shall be dismissed. The appellant is to pay the cost of this appeal

to the Supreme Court, and all other costs are to await the final disposition of the case.

HAMITER, Justice (dissenting).

The record in this cause affirmatively discloses that the two orders of the Conservation Commissioner, assailed by plaintiffs and sought to be annulled, directly affect almost the entirety of the proven Delhi oil field which is large in extent (approximately 12½ miles long and from one-half to 2½ miles wide) and contains innumerable producing wells. To me, therefore, the conclusion seems inescapable that the value of the rights in dispute herein greatly exceeds the appellate jurisdictional minimum of this court.